IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ISAIAH MARTIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 19-CV-00063-ODS |
| | ) | |
| SAFE HAVEN SECURITY SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AND OPINION (1) GRANTING THE PARTIES' MOTION TO APPROVE
COLLECTIVE ACTION SETTLEMENT, AND (2) GRANTING IN PART
AND DENYING IN PART PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES

Pending are the parties' Motion to Approve Collective Action Settlement (Doc. #164) and Plaintiffs' Application for Attorneys' Fees (Doc. #165). For the following reasons, the Court grants the parties' Motion to Approve Collective Action Settlement and grants in part and denies in part Plaintiffs' Application for Attorneys' Fees.

## I.    BACKGROUND

In January 2019, Plaintiffs filed this lawsuit on behalf of themselves and a putative class of "inside sales representatives" against Defendant Safe Haven Security Services, Inc. for alleged violations of the Fair Labor Standards Act ("FLSA"). Doc. #1. In September 2019, the Court conditionally certified a collective action of "all current and former sales representatives who worked for Defendant at any time from September 19, 2016, to the present, at Defendant's place of business in Kansas City, Missouri, who were not properly compensated for all time worked in excess of forty hours in a workweek." Doc. #43, at 7. Putative collective action members were notified and required to submit their consent to join forms by January 6, 2020. *Id.* at 4.

On July 17, 2020, the parties jointly moved for the Court's approval of their settlement of this matter. Doc. #164. Nothing was filed in response to the parties' motion, and the deadline to do so has passed. L.R. 7.0(c)(2). Also pending is Plaintiffs' application for attorneys' fees, which Defendant opposes. Docs. #165, 169.

## II.     MOTION TO APPROVE SETTLEMENT

On July 17, 2020, the parties executed a Collective Action Settlement Agreement ("Settlement Agreement").  Doc. #164-1.[1]  The Settlement Agreement provides compensation to the Settlement Class, which is defined as follows:

> All current and former sales representatives who worked for Defendant at any time from September 19, 2016, to the present, at Defendant's place of business in Kansas City, Missouri, and who timely exercised their right and option to opt into the Action and have not been Dismissed by the Court.

*Id.* at 1; Doc. #164-1, at 4.  The Settlement Class also includes Frank Musquiz, Steven Nimmo, Charmaine Payne, Jonathan Poindexter, Lauryn White, Alvinesha Wynn, and Carol Foster, whose claims the Court dismissed without prejudice on May 14, 2020. Doc. #164, at 2; Doc. #164-1, at 5; Doc. #164-2.

The 59 Settlement Class members[2] will receive a total of $375,000.00 ("Settlement Payment"), which will be distributed on a pro rata basis among the Settlement Class members based on rate of pay and length of employment with Defendant during the class period.  Doc. #164, at 2, 9; Doc. #164-1, at 2; Doc. #164-2; Doc. #164-3.  Except for the adjustments discussed *infra*, each Settlement Class member "will receive approximately 8.14 hours of overtime compensation along with an equal amount apportioned for statutory liquidated damages for each week worked for Defendant during the Class Period."  Doc. #164, at 4; Doc. #164-3.  Thirteen Settlement Class members will receive 75% of their pro rata distribution due to failure to appear at their scheduled depositions.  Doc. #164, at 9; Doc. #164-3.[3]  The Settlement Payment

---

[1] Unless otherwise noted, the Settlement Agreement's definitions are incorporated by reference in this Order, and capitalized terms have the same meaning as in the Settlement Agreement.

[2] The parties' motion refers to 58 or 59 Settlement Class members, and other filings suggest 58 Settlement Class members.  Doc. #164, at 2; Doc. #164-2; Doc. #165, at 4, 9; Doc. #169, at 6.  However, 59 Settlement Class members will be receiving part of the Settlement Payment, and Plaintiffs' reply to Defendant's opposition to the application for attorneys' fees clarifies there are 59 Settlement Class members.  Doc. #164-3; Doc. #170, at 1 n.1.

[3] Defendant moved to dismiss ten collective action members' claims due to failure to provide adequate, if any, advanced notice of their non-attendance at their scheduled depositions.  *See* Doc. #156.  Regarding three collective action members who failed to appear at depositions, Defendant moved for sanctions (instead of dismissal) because

also includes service awards, which are discussed *infra*. Doc. #164, at 10-11; Doc. #164-1, at 5-6. In exchange for the Settlement Payment, the Settlement Class members release all wage and hour claims they asserted (or could have asserted) against Defendant in this matter. Doc. #164, at 10-11; Doc. #164-1, at 7-8.

The Court finds the parties' settlement is fair, reasonable, and adequate. The Court also concludes the settlement is in the best interests of the Settlement Class members and should be approved, especially in the light of the benefits to the Settlement Class members accruing therefrom, the substantial discovery and investigation conducted by Plaintiffs' counsel prior to the parties' settlement, and the complexity, expense, risk, and probable protracted duration of further litigation. The Court also determines the consideration provided under the Settlement Agreement constitutes reasonable and fair value given in exchange for the release of claims against Defendant considering the disputed issues, circumstances, defenses, and the potential risks and likelihood of success of pursuing litigation. The Court also approves the settlement in accordance with the FLSA. 29 U.S.C. § 217.

## A.     Representative Plaintiffs and Service Awards

For purposes of the settlement, the Court designates Isaiah Martin and Kirk Kincaid as representatives of the Settlement Class. The Settlement Payment includes a $10,000 service award for Martin and a $5,000 service award for Kincaid. Doc. #164, at 10-11; Doc. #164-1, at 5-6. The parties also request a $500 service award for each Settlement Class member who was deposed. Doc. #164, at 10-11; Doc. #164-1, at 5-6. When deciding whether a service award is warranted, the Court considers "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citation omitted).

_____

they timely responded to counsel's efforts to reschedule their depositions. *Id.* Because the parties notified the Court of their settlement, the Court did not issue a ruling on Defendant's motion. But the parties believe including these thirteen collective members "in the Settlement Class is both fair and appropriate given the circumstances but that their recovery should be reduced." Doc. #164, at 9.

Both Martin and Kincaid stepped forward, placed their names on this lawsuit, provided "necessary evidence for the Court in support of their motion for conditional certification and assisted Counsel in their review of various documents in this litigation." Doc. #164, at 11. Martin, who requests a $10,000 service award, responded to two sets of written discovery, was deposed twice, fielded counsel's questions, and was considered counsel's "go-to" plaintiff. *Id.* Kincaid, who requests a $5,000 service award, responded to written discovery, was deposed once, and assisted counsel, but to a lesser degree than Martin did. *Id.*

Service awards of $5,000 and $10,000 are not uncommon. *Caligiuri*, 855 F.3d at 867 (citing *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming $10,000 service awards to named plaintiffs) and *Zillhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (granting named plaintiffs $15,000 each in service awards)); *see also Netzel v. W. Shore Grp., Inc.*, No. 16-CV-2552 (RHK/LIB), 2017 WL 1906955, at *7 (D. Minn. May 8, 2017) (granting service awards of $3,000 and $5,000). In addition, this Court previously approved $500 service awards to class members who were deposed. *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *4 (W.D. Mo. Aug. 4, 2015)

Upon consideration of the relevant factors, the Court finds service awards of $10,000 to Martin, $5,000 to Kincaid, and $500 to each Settlement Class member who was deposed are warranted. The Court also concludes the requested amounts are reasonable and appropriate in these circumstances. Thus, the Court grants the service award requests. Defendant shall deliver the service awards pursuant to the terms of the Settlement Agreement. Doc. #163-1, at 5.

## B. Class Counsel and Costs

For purposes of the settlement, the Court appoints Marc N. Middleton, Ryan M. Paulus, and Megan Lowe Stiles of Cornerstone Law Firm as Class Counsel. Plaintiffs and Class Counsel seek recovery of $7,956.30 for costs incurred in this matter. Doc. #164-1, at 6. Defendant does not oppose the request for costs or the amount of costs requested. *Id.* The Settlement Payment does not provide for costs, and the parties have agreed to be bound by the Court's award of costs. Doc. #164-1, at 2, 6-7.

Class Counsel provided an itemized list of costs and expenses, which the Court reviewed. Doc. #164-4. The Court grants Class Counsel's request for costs and awards Class Counsel $7,956.30 in costs. Defendant shall deliver payment to Class Counsel for costs pursuant to the Settlement Agreement's terms. Doc. #164-1, at 6-7.

### C.  Settlement Payment and Notice to Settlement Class Members

Pursuant to the Settlement Agreement, Defendant shall deliver to Class Counsel the Settlement Payment within 60 days of this Order in the form of an individual check for each Settlement Class member pursuant to the settlement allocations attached to the Settlement Agreement. Doc. #164-1, at 9; Doc. #164-3.[4] Class Counsel shall administer the settlement and bear the costs and expenses associated with administering the settlement and distributing the Settlement Payment. Doc. #164-1, at 9. Upon receipt of the Settlement Payment, Class Counsel shall promptly distribute the Settlement Payment to the Settlement Class members along with a Notice, which is attached to the Settlement Agreement. *Id.*; Doc. #164-5. The Notice informs Settlement Class members of their eligibility to participate in the settlement by cashing the check, and they will only be bound by the settlement if they cash their checks. Doc. #164-1, at 9; Doc. #164-5. The Notice also advises Settlement Class members that they must cash the check within 120 days of the date the Notice is sent. *Id.* This 120-day deadline shall be bolded and underlined in the Notice.[5]

### III.  APPLICATION FOR ATTORNEYS' FEES

In an FLSA collective action, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant…." 29 U.S.C. § 216. Because they were "unable to agree to the appropriate

---

[4] According to an attachment to the parties' Settlement Agreement, the checks range from $305.28 to $48,734.19. Doc. #164-3. The average Settlement Payment check is roughly $6,300. *Id.*

[5] If a Settlement Payment is returned as undeliverable, Class Counsel shall make all reasonable efforts to locate a new address for the Settlement Class member. In addition, the Court expects the parties to work with one another to resolve any issues that may arise during implementation of the Settlement Agreement.

5

amount of fees to be awarded to Plaintiffs' counsel," the parties briefed the issue for the Court. Doc. #164, at 12. Class Counsel asks the Court to award to $1,098,223.04 in attorneys' fees.[6] Defendant opposes the amount of fees sought and suggests an attorneys' fee award of $125,000 is appropriate in this matter. Doc. #169, at 20.

Counsel seeking recovery of fees bears the burden of establishing "a factual basis to support the award." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citation omitted). Two principal methods are used by courts to award attorneys' fees: lodestar and percentage of the benefit. *Galloway v. The Kan. City Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016). Class Counsel utilizes the lodestar method, so the Court will do the same. "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) (citation omitted).

To determine the reasonableness of the fee award, courts consider several factors including, but not limited to, time and labor required; novelty and difficulty of legal questions; required skill to handle the case; attorney's preclusion from other employment; customary fee for similar work in the community; whether the fee is fixed or contingent; degree of success or results obtained; experience, reputation, and ability of the attorney; undesirability of the case; and awards in similar cases. *See Keli v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (citing *Johnson v. Ga. Hwy. Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)); *Phillips v. Mo.*, No. 97-CV-748, 2000 WL 33910092, at *1 (W.D. Mo. Mar. 29, 2000) (citations omitted).

---

[6] In the Application for Attorneys' Fees, Class Counsel requested $1,114,294.10 in attorneys' fees. This figure is the product of multiplying Class Counsel's purported attorneys' fees (i.e., $557,147.05) by two. In the reply, Class Counsel conceded there was a calculation error related to a time entry on November 7, 2018, which should have totaled $1,550, not $1,860. Doc. #165-1, at 2; Doc. #170, at 6 n.16. In addition, Class Counsel identified fourteen hours of work related to individuals who are not part of the Settlement Class and conceded the request for attorneys' fees should be reduced by $7,725.53. *Id.* at 9 n.22. Pursuant to these concessions, Class Counsel's requested fees is decreased to $549,111.52. When multiplying that amount by two, as Plaintiffs suggest, Class Counsel's request for attorneys' fees is revised to $1,098,223.04.

### A. Skill, Experience, and Ability

Three attorneys – Middleton, Paulus, and Stiles – and four paralegals assisted Plaintiffs in this matter. Middleton and Paulus have been licensed to practice law since 2007, and Stiles has been licensed to practice law since 2016. As their declarations demonstrate, Class Counsel are experienced litigators in wage and hour matters. Doc. # 165-2; Doc. #165-3; Doc. #165-4. They successfully litigated this matter through conditional certification, discovery, motions, and settlement. Thus, they have demonstrated their skill, experience, and ability. Defendant does not dispute Class Counsel's skill, experience, and ability.

### B. Preclusion from Other Employment

According to Class Counsel, this matter "consumed the bulk of partner Marc Middleton's time over the past eighteen months and also occupied the time of the Firm's Principal and Managing Partner, Ryan Paulus." Doc. #165, at 9; Doc. #165-2, at 3-4. At Class Counsel's firm, attorneys generally work with twenty-five to thirty-five cases or clients at a time. *Id.* at 9; Doc. #165-3, at 2. Class Counsel contends this matter was "essentially litigated as fifty-eight[7] individual cases," and thus, "Middleton, Paulus, and Stiles each had nineteen Plaintiff cases to litigate off this matter alone." Doc. #165, at 9. As a result, this matter accounted for two-thirds of each attorney's caseload, and "they were not able to take on new revenue-generating clients." *Id.* at 9-10; *see also* Doc. #165-2, at 3; Doc. #165-3, at 2; Doc. #165-4, at 2. Defendant does not dispute that Class Counsel was precluded from employment in other matters.

### C. Type of Fee

Class Counsel undertook representation in this matter on a contingent basis. Thus, unless Plaintiffs prevailed, Class Counsel would not recover costs, expenses, or fees. Consequently, Class Counsel bore the risk of pursuing this matter.

---

[7] Presumably, Class Counsel meant 59, not 58, individual cases. *See supra*, n.2.

## D.    Undesirability of Case

Class Counsel maintains this matter was undesirable because most Plaintiffs worked for Defendant for less than ten weeks.  Doc. #165, at 13.  As a result, individuals may not have been as willing to participate in the collective action, and the damages available to each Plaintiff was relatively small.  Defendant does not dispute Class Counsel's depiction of the undesirability of this matter.

## E.    Reasonableness of Hourly Rate

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated."  *Miller v. Dungan*, 764 F.3d 826, 831 (8th Cir. 2014) (citation omitted).  "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."  *Id.* (citation omitted).  Class Counsel argues a $675.75 hourly rate for Middleton and Paulus, a $350 hourly rate for Stiles, and a $150 hourly rate for paralegals are reasonable and appropriate.

To support their hourly rates, Class Counsel represents "the average hourly rate for a partner-level attorney in class action litigation" in the Kansas City area is $675.75.  Doc. #165, at 10.  Class Counsel provides information published by *Missouri Lawyers Weekly* but does not explain how they calculated the average hourly rate.  *Id.*; Doc. #165-5.  According to the exhibit provided, the hourly rate of the fourteen highest paid attorneys (identified as partners or of counsel) in Kansas City ranged from $650 to $865 in 2019.  Doc. #165-5, at 1.  Twelve attorneys' practices are identified as "Class Action/MDL," and two attorneys' practices are identified as "Public Interest Class Action."  *Id.*  Regarding other Kansas City partners who practiced in "Class Action/ MDL," their hourly rates ranged from $400 to $580.  *Id.* at 2-5.

The data provides some insight into Kansas City-based attorneys' hourly rates.  But the information is based on a small segment of the Missouri bar.  *See 2019 Billing Rates*, Mo. Law. Wkly., Aug. 5, 2019, at BR2-BR7 (noting data was obtained "from fee applications filed with courts within the past twelve months" from "213 Missouri-based attorneys" of varying experience and out-of-state counsel associated with Missouri-based firms).  Additionally, as the publication noted, "[a] large portion of [the] data [was]

thanks to a massive [$1.5 billion] class-action settlement" where "[a] third of the settlement went to fees for hundreds of lawyers across the country who aided in the litigation." *Id.* at BR2. The filings accompanying the class-action settlement "reveal[ed] the biggest hourly fees" in the publication's billing rate report for 2019. *Id.* Even when including the class-action settlement in its analysis, the publication found the median hourly rate for a Kansas City partner was $475. *Id.* (noting the hourly rate was calculated from "a pool of 178 lawyers" in Kansas City). Critical to this Court's analysis of what constitutes a reasonable hourly rate, the data does not identify the community in which the matters were litigated. *See Miller*, 764 F.3d at 831. Given that the listed attorneys were involved in class actions and multidistrict litigation, it is reasonable to assume at least some cases were litigated outside the Kansas City area.

Regarding Stiles's requested hourly rate of $350, Class Counsel points to a recent decision from the United States District Court for the District of Kansas. Doc. #165-7; Doc. #165-8. Therein, the Court found $300 was a reasonable hourly rate for Stiles and $600 was a reasonable hourly rate for Middleton. *Id.* But, in that matter, Defendant did not contest the reasonableness of the rates. Doc. #165-7, at 10.

Defendant argues Class Counsel's hourly rates are unreasonable. Among other things, Defendant points to Plaintiffs' February 28, 2020 supplemental interrogatory answer where Middleton's and Paulus's hourly rate through December 31, 2018, was $500. Doc. #165-6, at 2. But the hourly rate increased to $600 on January 1, 2019. *Id.* Then, after September 19, 2019, when the Court granted conditional certification, the hourly rate increased to $800. *Id.* Thus, between December 2018 and September 2019, Middleton's and Paulus's hourly rate increased by more than sixty percent. In the same answer, Stiles's hourly rate was reported as $300. *Id.* Yet, Class Counsel now claims Stiles's hourly rate is $350.

Defendant also contends Class Counsel's requested hourly rates are greater than those awarded by this Court and other courts. For example, Defendant cites a decision issued by the Honorable Nanette Laughrey in 2020 where she found hourly rates between $215 through $400 were reasonable. Doc. #169, at 12. But that matter was filed in this Court's Central Division, and thus, the relevant community was central Missouri, not Kansas City. *Hopkins v. AeroCare Home Med. Equip., Inc.*, No. 2: 19-CV-

04054-NKL, 2020 WL 4059739, at *4 (W.D. Mo. July 20, 2020). The community in which the matter is litigated is essential to determining the reasonable hourly rate. *Miller*, 764 F.3d at 831. This analysis includes the division of this Court. *See Thornburg v. Open Dealer Exch., LLC*, No. 17-06056-CV-SJ-ODS, 2019 WL 3291569, at *5 (W.D. Mo. July 22, 2019); *St. Louis Effort for AIDS v. Lindley-Myers*, No. 13-4246-CV-C-ODS, 2018 WL 1528726, at *3-4 (W.D. Mo. Mar. 28, 2018).

Based upon the foregoing, the Court concludes Class Counsel has not met its burden of establishing the hourly rates Class Counsel requested. The Court finds a reasonable hourly rate for Middleton and Paulus is $500, a reasonable hourly rate for Stiles is $300, and a reasonable hourly rate for Class Counsel's paralegals is $150.

### F.    Time and Labor

According to their declarations and time records, Class Counsel (Middleton, Paulus, and Stiles) and their paralegals worked 1,103.69 hours on this matter. Doc. #165, at 6; Doc. #165-1.[8] The submitted time records include the dates on which work was performed, the identity of the person performing the work, the amount of time spent on each task, and a general description of work performed. Doc. #165-1. The Court is permitted to rely on summaries and counsel's declarations when considering a request for attorneys' fees. *See In re Genetically Modified Rice Litig.*, 764 F.3d 864, 871 (8th Cir. 2014) (citation omitted).

Class Counsel spent numerous hours responding to discovery because each opt-in Plaintiff was served with individual discovery requests. Class Counsel represents Settlement Class members substantively responded to more than 1,100 interrogatories and more than 1,400 requests for production of documents. Doc. #165, at 7 n.15. During discovery, more than 85,000 documents were exchanged, including cell phone

---

[8] Defendant agreed Class Counsel's time records included 1,103.69 hours, but its breakdown of Class's Counsel's work (Middleton: 625.87 hours, Paulus: 132.7 hours, Stiles: 291.89 hours, and paralegals: 48.6 hours) totaled 1,099.06 hours. Doc. #169, at 7. In the reply, Class Counsel represented Middleton billed 624.4 hours, Paulus billed 129.3 hours, Stiles billed 244.09 hours, and the paralegals billed 105.9 hours. Doc. #170, at 5 n.13. Class Counsel's breakdown totals 1,103.69 hours. The Court utilizes Class Counsel's breakdown of hours.

record, timecards, time entries, payroll data, emails, and other documents to establish Plaintiffs were working off the clock and whether they were paid for overtime worked. *Id.* at 6-7. The parties also briefed several motions. *See*, *e.g.*, Docs. #2-3, 11, 15-16, 41-42, 44-46, 88, 91, 95, 98-99, 102-03, 105-08, 113, 124, 156-57. Class Counsel also prepared seventeen Settlement Class members for their depositions and represented them during their depositions. Doc. #164-3; Doc. #165-1, 49-55.

Defendant argues Class Counsel expended an unreasonable amount of time on this matter. Doc. #169, at 8. Defendant disputes Paulus was actively involved from the inception of this matter as Class Counsel represents. It also argues Paulus and Middleton duplicated work, too much time was spent to complete simple tasks, and attorneys performed work that should have been delegated to a paralegal.

(1)    Duplicative Work

Defendant contends Middleton handled pleadings, correspondence and agreements between the parties, discovery, hearings, and depositions. Doc. #169, at 8-9. As a result, Defendant maintains many of Paulus's time entries consisted of six-minute increments reviewing notifications generated from the Court's CM/ECF system and emails between counsel and should be eliminated. Defendant also asserts Paulus's time was unnecessarily duplicative of Middleton's time, and therefore, Paulus's hours should be eliminated from the requested attorneys' fees or the requested attorneys' fees should be reduced by $20,423.62. *Id.* at 7-9; Doc. #169-1.

Class Counsel concedes Paulus and Middleton occasionally billed for similar work but claims "it was reasonable for them to do so in that such work represents the distinct contributions of each lawyer to this litigation." Doc. #170, at 4. Class Counsel points out that Paulus kept apprised of the case's progression, strategized with Middleton, and assisted during critical aspects of the matter, including mediation and settlement. *Id.*

When deciding whether a fee award is reasonable, the Court must exclude "hours that are excessive, redundant, or otherwise unnecessary." *El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010) (citations omitted). The Court must consider the "complexity of the issues" and whether the "requested amount of lawyering" was

warranted. *Id.* (citation omitted). "[W]hile staffing a case with multiple attorneys across multiple organizations is not unreasonable, it necessarily carries inefficiencies that should be addressed through the exercise of billing judgment." *M.B. v. Tidball*, No. 2:17-CV-4102-NKL, 2020 WL 1666159, at *15 (W.D. Mo. Apr. 3, 2020) (applying a ten percent reduction to attorneys' hours to address the "inefficiencies inherent in cases that are staffed by multiple attorneys").

Throughout Class Counsel's time records, there are numerous instances where both Middleton and Paulus reviewed the same email or CM/ECF notification. *See* Doc. #165-1, at 3-16, 18-20, 22, 25, 27-36, 42, 48-50. Once Stiles began working on the matter, there was additional duplication – and at times, triplication – of the attorneys' work and responsibilities. *Id.* at 22-39, 41-50, 54-58. On occasion, it appears two (and sometimes three attorneys) billed time for reviewing the same emails, CM/ECF notifications, discovery, and attending the same deposition. While attorneys must collaborate, they should be mindful not to duplicate efforts on simple tasks and should avoid undertaking the same responsibilities.

While the Court finds two attorneys' attendance at mediation was prudent in this matter, two attorneys reviewing straightforward documents – e.g., certificates of services – and duplicating minor tasks are unnecessary and unreasonable. In the Court's estimation, Paulus and Middleton unnecessarily duplicated at least forty hours of work, and Stiles duplicated at least twenty hours of work. The Court reduces Class Counsel's request for attorneys' fees by these hours. *See Philipp v. ANR Freight Sys., Inc.*, 61 F.3d 669, 675 (8th Cir. 1995) (finding the district court did not abuse its discretion in reducing the requested fees for duplicative work).

(2)     <u>Clerical or Administrative Work</u>

The Court notes that Stiles, an attorney, also billed for clerical or administrative, such as redacting documents, downloading documents and filings, and making a chart of what records have been received by opt-in collective action members. Doc. #165-1, at 23, 25-27, 31, 33, 36. These 6.2 hours should have been billed at a paralegal's rate. Accordingly, the Court reduces Stiles's requested hours by 6.2 but includes those hours in the paralegals' hours. *See Philipp*, 61 F.3d at 675 (affirming reduction of fee award

12

request due to performance of clerical duties); *St. Louis Effort for AIDS*, 2018 WL 1528726, at *4 (citation omitted).

### (3)   Unreasonable Time

Defendant argues Class Counsel spent an unreasonable amount of time to complete simple tasks. Doc. #169, at 11. It points to one example: a paralegal billing 4.7 hours to create tables of contents and authorities for a brief. *Id.* But Defendant cites to a filing that does not pertain to Class Counsel's attorneys' fees request. And the Court's review of Class Counsel's time records does not reveal the time Defendant alleges was spent. Accordingly, the Court rejects this argument by Defendant.

### (4)   Incorrect Time Entries

When reviewing Class Counsel's time records, the Court found a few errors. First, Paulus billed thirty minutes for a pretrial conference on February 7, 2020, but no pretrial conference was held on that date in this matter. Doc. #165-1, at 19. On March 30, 2020, both Paulus and Middleton billed one-tenth of an hour for reviewing a text order, but no text order was issued that day. *Id.* at 26. These entries are both errors, and the Court will reduce Class Counsel's request for motion for fees accordingly.

### G.   Lodestar Calculation

When multiplying the hours reasonably expended by Class Counsel and Class Counsel's paralegals by the reasonable hourly rates determined above, the Court arrives at the following figures:

| | | | | | | |
|---|---|---|---|---|---|---|
| Middleton: | 613.7 hours[9] | x | $500 hourly rate | = | $306,850.00 |
| Paulus: | 88.6 hours[10] | x | $500 hourly rate | = | $ 44,300.00 |

---

[9] According to Class Counsel, Middleton billed 624.4 hours. Doc. #170, at 5. However, Class Counsel conceded Middleton's time should be reduced by 10.6 hours due to time spent on non-Settlement Class members' claims. Also, as explained *supra*, the Court determined Middleton incorrectly billed one-tenth of an hour. Therefore, Middleton's hours are reduced by 10.7 hours, for a total of 613.7 hours.

[10] According to Class Counsel, Paulus billed 129.3 hours. *Id.* n.13. However, Class Counsel conceded Paulus's time should be reduced by one-tenth of an hour. In addition, the Court determined Paulus duplicated forty hours of work and incorrectly

| Stiles: | 217.89 hours[11] | x | $300 hourly rate | = | $ 65,367.00 |
| Paralegals: | 108.8 hours[12] | x | $150 hourly rate | = | $ 16,320.00 |

Based on the foregoing, the total lodestar is $432,837.00.

## H.    Class Counsel's Requested Multiplier

Class Counsel suggests the Court multiply the lodestar by two so that Class Counsel is "adequately compensate[d]…for accepting this matter on a contingent fee arrangement." Doc. #165, at 16. "An upward adjustment to an attorney's lodestar hourly rate is permissible "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 532 (8th Cir. 1999) (quoting *Penn. v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986)). "Because the lodestar amount may already compensate the applicant for exceptionally good service and results,…the fee applicant must do more than establish outstanding service and results." *Id.* (quoting *In re Apex Oil Co.*, 960 F.2d 728, 732 (8th Cir. 1992)). "The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended." *Id.* (citation omitted).

Class Counsel argues the result obtained in this matter is "exceptional" because, on average, the Settlement Class members are receiving more than they originally sought. Doc. #165, at 11-12. That is, Settlement Class members claimed they worked roughly thirteen hours per week, most of which they claimed were not compensated. *Id.*

---

billed six-tenths of an hour. Thus, Paulus's hours are reduced by 40.7, for a total of 88.6 hours.

[11] According to Class Counsel, Stiles billed 244.09 hours. *Id.* at 5. However, the Court found Stiles duplicated twenty hours of work and spent 6.2 hours working on administrative or clerical work. Thus, Stiles's hours are reduced by 26.2, for a total of 217.89 hours.

[12] According to Class Counsel, their paralegals billed 105.9 hours. *Id.* at n.13. However, Class Counsel conceded 3.3 hours should be deducted from the paralegals' time due to time spent on non-Settlement Class members' claims. In addition, the Court determined 6.2 hours billed by Stiles should have been billed at a paralegal hourly rate. Thus, the paralegals' hours are increased by 2.9 hours, for a total of 108.8 hours.

at 12.  But each Settlement Class member is compensated for eight hours of overtime worked per week plus an equal amount in liquidated damages.  *Id.*

Defendant contends the requested attorneys' fees are grossly disproportionate to the results obtained, and a multiplier is inappropriate.  Doc. #169, at 7, 13.  Defendant argues this matter was not a complex FLSA case, it involved slightly more than 100 individuals (although roughly half of the individuals' claims were dismissed due to failure to respond to discovery), and it "simply involved reviewing time-sheets and phone records, and determining how much unworked time Plaintiffs allegedly were not compensated…."  *Id.* at 13-14.  Defendant suggests a downward departure is appropriate because Class Counsel's fees "should not be the result of failed motions, dilatory practices, and unnecessary work, especially when the results are less than a complete, or even near complete[,] success."  *Id.* at 14.  In addition, Defendant contends Class Counsel should not recover fees for all work expended when nearly half of the work pertained to opt-in collective action members whose claims were dismissed.  *Id.* at 16.

This matter presented a relatively straightforward legal issue: whether Plaintiffs were compensated for overtime worked.  Once the necessary documents were obtained, Class Counsel had to calculate the hours of overtime worked by Plaintiffs, determine whether Plaintiffs were compensated, in whole or in part, for overtime worked, and how much Plaintiffs were owed.  The Court finds Class Counsel's work is accurately reflected in the time and hourly rates, and there is insufficient justification for applying a multiplier.  Accordingly, the Court denies Plaintiff's request to apply a multiplier to the lodestar.

## IV.     CONCLUSION

For the foregoing reasons, the Court grants the parties' Motion to Approve the Collective Action Settlement.  In addition, the Court designates Martin and Kincaid as representative Plaintiffs and approves service awards of $10,000 to Martin, $5,000 to Kincaid, and $500 to each Settlement Class member who was deposed.  The Court appoints Class Counsel, awards costs in the amount of $7,956.30, and awards attorneys' fees in the amount of $432,837.00.

Pursuant to the Settlement Agreement, the Court retains jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement. The Court also retains jurisdiction over Settlement Class members and Defendant for the purpose of enabling them to seek further orders as may be necessary or appropriate for the implementation or enforcement of the Settlement Agreement or this Order.

Within five business days of receiving the Settlement Payment and payment for the Court-ordered attorneys' fees and costs, the parties shall file a joint stipulation of dismissal.

IT IS SO ORDERED.

/s/ Ortrie D. Smith

DATE:  August 19, 2020                    ORTRIE D. SMITH, SENIOR JUDGE
                                          UNITED STATES DISTRICT COURT